878 F.2d 1430
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The DEPARTMENT of the AIR FORCE, Langley Air Force Base, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
and
National Association of Government Employees, Locals R4-26
and R4-106, Intervenor.
 No. 88-2171.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1989.
Decided July 3, 1989.
 
 Rick Lloyd Richmond (John R. Bolton, Assistant Attorney General, William Kanter, Appellate Staff, Civil Division, Department of Justice on brief) for petitioner.
 William Reed Tobey (William E. Persina, Acting Solicitor, Arthur A. Horowitz, Associate Solicitor, Federal Labor Relations Authority on brief) for Respondent. (Neil C. Bonney on brief) for intervenor.
 Before SPROUSE, Circuit Judge, MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The Department of the Air Force appeals an order of the Federal Labor Relations Authority (FLRA) which would require the Air Force to negotiate with the National Association of Government Employees (NAGE) over NAGE's proposed changes to the Air Force's Performance Management Program (PMP) for employee bonuses. NAGE was allowed to intervene and has filed a brief in support of the order. FLRA has filed a cross-application for its enforcement. For the reasons to follow we conclude that the petition of the Air Force for review should be granted and that enforcement of the FLRA order should be denied.
 
 
 2
 * The Federal Service Labor Management Relations Statute (FSLRMS) requires a government agency to negotiate in good faith with employees over "conditions of employment" 5 U.S.C. Secs. 7101 et seq.; Sec. 7102(2), but the agency is exempted from the duty to negotiate as to matters excluded by federal law or government-wide rules or regulations. New York Council, Ass'n. of Civil Technicians v. FLRA, 757 F.2d 502, 508 (2d Cir.), cert. denied, 474 U.S. 846, 106, S.Ct. 137 (1985); see 5 U.S.C. Secs. 7106(a), 7117(a)(1). Nevertheless, an agency must bargain over "procedures ... [used] in exercising [this] authority." 5 U.S.C. Sec. 7102(b)(2).
 
 
 3
 The Air Force notified the NAGE in 1987 that it proposed changes in its PMP. NAGE requested negotiations and submitted its own proposal for changes in the PMP.[1] The NAGE proposal mandated cash awards of varying salary percentages to employees receiving certain performance ratings on a five-step performance rating chart. The lowest rating would require termination or demotion (no bonus); the next rating--up the scale--would result in no bonus, but no adverse personnel action. The next three ratings to the top of the chart would receive cash bonuses. These performance ratings would be given before the cash awards were made.
 
 
 4
 The most significant difference between the Air Force and NAGE proposals is that the NAGE proposal made bonus payments to certain performance ratings mandatory. Accordingly, the Air Force refused to bargain over NAGE's proposal on the grounds that it affected the Air Force's budget control, that it was inconsistent with Office of Personnel Management (OPM) regulations, and that such inconsistent proposals are not subject to negotiation under the FSLMRS. 5 U.S.C. Sec. 7117(a)(1). NAGE contended that the proposals were consistent with government regulations, and that the proposal was a "procedure" under 5 U.S.C. Sec. 7106(b)(2) and as such was properly negotiable.
 
 
 5
 The Air Force argued before the FLRA that the NAGE proposal: (1) required it to consider budget constraints when rating employee performance, in violation of 5 U.S.C. Sec. 4302, 5 C.F.R. Secs. 430.203, .204 and .206(b); (2) prevented it from considering budget size, in violation of 5 C.F.R. Sec. 430.506(a) and 430.503(f); and (3) destroyed the purpose behind internal agency review of cash performance awards, in violation of 5 C.F.R. Sec. 430.503(c)(1). In July, 1988, the FLRA overruled the Air Force objections and found the NAGE proposals "negotiable." National Association of Government Employees, Locals R4-26 and R4-196 and Department of the Air Force, Langley Air Force Base, Virginia, 32 F.L.R.A. 88 (1988). In doing so the FLRA held that the proposals were consistent with existing regulations, and that the proposals were negotiable "procedures" under 5 U.S.C. Sec. 7106(b)(2). Id. at p. 5; see National Treasury Employees Union, Chapter 245 and Department of Commerce, Patent and Trademark Office, 30 F.L.R.A. 1219 (1988). As indicated, we disagree.
 
 
 6
 This Court must review FLRA orders in accordance with Section 706 of the Administrative Procedures Act (APA), which provides that a reviewing court may set aside such action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and must set aside an FLRA decision that is not "reasonable and defensible." 5 U.S.C. Sec. 706(2)(A), Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444 (1983).
 
 II
 
 7
 A. Negotiability under Section 7106.
 
 
 8
 Although the parties gave short shrift to Section 7106 of FSLMRS in their briefs and argument, the FLRA seemingly relied on the proposition that the NAGE proposal was a negotiable "procedure " which management officials must observe in exercising their authority. We move first to this issue.
 
 
 9
 Section 7106 of the FSLMRS lists certain management prerogatives that are exempt from bargaining. Included on the list is the right of an agency to determine its own budget. 5 U.S.C. Sec. 7106(a)(1). We think it clear that NAGE's proposed mandatory payments for performance ratings bear on the right of the Air Force management to determine its own budget. Although the FLRA cites Department of Defense v. FLRA for the proposition that budgetary concerns are not implicated, we find that Court of Appeals decision inapplicable because it does not address the management's reserved rights under 5 U.S.C. Sec. 7106(a). American Federation of Government Employees, AFL-CIO and Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio, 2 F.L.R.A. 604 (1980), enforced as to other matters sub. nom. Department of Defense v. FLRA, 659 F.2d 1140 (D.C.Cir.1981), cert. denied sub. nom. AFGE v. FLRA, 455 U.S. 945, 102 S.Ct. 1443 (1982). The NAGE proposal requires mandatory payment of bonuses based on the employee's performance rating, and would force the Air Force to consider the effects on its budget allocations and limits when awarding the performance ratings. The proposal would, therefore, put intense pressure on Air Force management to first give consideration to the budgetary impact of the payment of the sums mandated by the performance ratings assigned before actually awarding the official rating.
 
 
 10
 Turning to Section 7106(b)(2), which permits negotiation of "procedures which management officials of the agency will observe in exercising any authority under this section; ..." we note that the FLRA generally observes a two-pronged process to determine whether union proposals pertain only to procedures, negotiable under Section 7106(b)(2), or, instead, impinge upon rights set apart for management under Section 7106(a). 5 U.S.C. Sec. 7106(b)(2); National Federation of Federal Employees, Local 1745 v. Federal Labor Relations Authority, 828 F.2d 834 (D.C.Cir.1987). Where, as here, the terms of a proposal are in the gray area between procedure and substance, the FLRA deems the proposal non-negotiable if its adoption would "directly interfere" with management's exercise of a reserved right. Id. at 840. Such an analysis cannot be done in a theoretical vacuum. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority, 857 F.2d 819, 821 (D.C.Cir.1988). Accordingly, "when a proposal stipulates procedures that so affect the environment within which an agency is allowed to act that it places the equivalent of a substantive restraint on its ability to act, that proposal has forfeited its claim to procedural purity," and becomes non-negotiable. Id. It is clear that management's reserved right to establish its own budget is constrained by the separate mandatory expenditures required by the performance rating bonuses. On oral argument before this Court, counsel for the FLRA even agreed that reallocation of sums budgeted to hardware, such as aircraft, might be required in order to meet the mandatory bonus payments. For these reasons the proposal would "directly interfere" with the Air Force's determination of its budget, a right reserved to it by Section 7106.
 
 
 11
 B. Negotiability under Section 7117(a)(1).
 
 
 12
 1. Requirement of considering employee performance alone in giving performance rating.
 
 
 13
 Any proposal that would contravene federal law or any government-wide rule or regulation is also non-negotiable. 5 U.S.C. Sec. 7117(a)(1). The immediate and practical effect of the NAGE proposal for mandatory bonus payments would be to create violations of the restraints imposed by 5 U.S.C. Sec. 4302, 5 C.F.R. Secs. 430.203, .204 and .206(b) by causing Air Force management assigning performance ratings to consider factors other than merit alone.[2] We have held herein that this proposal puts pressure on management to the extent that they cannot freely determine their budget. Similarly, the NAGE proposal also puts pressure on management to consider budget constraints, as opposed to merit or on-the-job performance, when assigning performance ratings. By doing so, the proposal forces the Air Force to violate the regulatory prohibition on considering factors other than merit. We believe that, just as with Section 7106 of the FSLMRS, our analysis under Section 7117(a)(1) must not be done in a theoretical vacuum, and therefore this violation, indirect though it may be, renders the proposal non-negotiable. See Department of the Treasury, 857 F.2d at 821.
 
 
 14
 2. Requirement for administering awards within existing funds.
 
 
 15
 The government-wide regulations set out at 5 C.F.R. Secs. 430.506(a) and 430.503(f) require that performance awards programs operate "within existing appropriated funds." [Emphasis added.] The Air Force points out that the mandatory nature of the NAGE proposals, and the fact that the performance ratings and performance awards are done separately, means that they would be faced with acceding to the union's mandatory payment and exceeding and violating the union's proposal. Again, the indirect effect of the proposal creates an inconsistency with a government regulation, thereby rendering the proposal non-negotiable.
 
 
 16
 3. Requirements for two reviews of awards by agency officials.
 
 
 17
 Additionally, the regulation set out at 5 C.F.R. Sec. 430.503(c)(1) requires that performance awards be reviewed by agency officials. There are two reviews required. The mandatory nature of the awards proposals negates giving any efficacy to such reviews. To say that review may still be had is simply to give lip service to form over substance.
 
 
 18
 We conclude that because the FLRA improperly determined that the PMP proposal was negotiable, the petition of the Air Force for review must be granted and the cross-application of FLRA for enforcement of its order should be denied.
 
 
 19
 REVIEW GRANTED; ENFORCEMENT DENIED.
 
 
 
 [1]
 PERFORMANCE AWARDS
 
 
 [1]
 Performance awards will be distributed fairly and equitably among unit employees based on the employee's performance rating level
 
 
 [2]
 Performance awards will be cash and based on the employees [sic] rating of record
 
 
 [3]
 Employees rated superior or excellent will be recognized; fully successful will be recognized with a 1% performance award provided the employee exceed [sic] at least one critical element of the performance plan
 
 
 [4]
 Performance awards for superior ratings must exceed performance awards for an excellent rating and performance awards for an excellent rating must exceed performance awards for a fully successful rating
 
 
 [5]
 The following range of cash performance awards will be issued to unit employees:
 a. A fully successful rating that exceeds at least one critical element of the performance plan will receive 1%.
 b. An excellent rating will receive from 1 1/2%-2 1/2%.
 c. A superior rating will receive from 3%-5%.
 
 
 [2]
 The FLRA addresses these regulations as government-wide in its decision, and its brief